**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

LIMARIS SANCHEZ-DIAZ, <u>et al</u>.,
    **Plaintiffs,**

        **v.**                **CIVIL NO.** 07-1379 (FAB)

UHS of Puerto Rico, Inc.,
<u>et al</u>.,
    **Defendants.**

**OPINION AND ORDER**

On May 3, 2007, Ilse Allende-Sanchez ("Ilse"), a minor, and her parents Limaris Sanchez-Diaz and Mervyl Allende-Quinones filed suit against defendants UHS of Puerto Rico, Inc. (d/b/a/ Hospital San Pablo), Doctor Gilberto Cortes-Figueroa ("Dr. Cortes") and Doctor Carlos Diaz-Pinto ("Dr. Diaz") claiming that defendants committed medical malpractice during Ilse's birth. On August 28, 2008, defendant Dr. Diaz filed a motion for summary judgment requesting the dismissal of the claims against him because he qualifies as a "good Samaritan" pursuant to Puerto Rico Law No. 139 of June 3, 1976 (Docket No. 51).[1] Plaintiffs opposed Dr. Diaz's motion on September 12, 2008. (Docket No. 57) To supplement the record, on October 20, 2008, the Court ordered the parties to file

---

[1] The Court reminds defendant Dr. Diaz that, as the moving party, it is his responsibility to provide the Court with a certified English language translation of the opinion on which he relies in his motion, <u>Elias-Vega v. Chenet</u>, 147 D.P.R. 507 (1999). <u>See</u> <u>Puerto Ricans For Puerto Rico Party v. Dalmau</u>, 544 F.3d 58, 67 (1st Cir. 2008). Should Dr. Diaz choose to rely upon <u>Elias-Vega</u> in the preparation of his jury instructions, for example, those parts of <u>Elias-Vega</u> on which he relies must be accompanied by a certified English language translation.

briefs on ths issue of Dr. Diaz's "medical privilege issues" and his responsibilities at Hospital San Pablo (Docket No. 62).  On November 26, 2008, Dr. Diaz filed his motion in compliance with the Court's Order (Docket No. 64).  The following day plaintiffs filed their motion in compliance with the Court's Order although they styled it a "supplemental motion" opposing Dr. Diaz's motion for summary judgment (Docket No. 66).

For the reasons provided below, the Court **DENIES** Dr. Diaz's motion for summary judgment (Docket No. 51).  The Court also takes **NOTE** of the two supplemental motions filed by Dr. Diaz and the plaintiffs (Docket Nos. 64 & 66, respectively).

## I.    Factual Background

Dr. Diaz is a medical doctor with a specialty in obstetrics and gynecology, certified to practice medicine in Puerto Rico.  He has been an attending physician at Hospital San Pablo since 1988 and is a member of the medical staff of the Hospital.  He delivered Sanchez's first child on March 14, 1995, by means of caesarean section at 38.5 weeks of gestation.  Sanchez stopped using Dr. Diaz as her doctor in 1998 or 1999.  This date did not overlap with the time when she became a patient of defendant Dr. Cortes, which occurred two to three years earlier, in February, 1996.  There is no professional association between Dr. Diaz and Dr. Cortes.

Early in the morning of July 9, 2001 Sanchez went to Hospital San Pablo.  At approximately 6:00 a.m. she was examined by a nurse

in the "labor room" and was found to have moderate regular contractions and one centimeter of dilation.  At about this time Sanchez was connected to an external fetal monitor.  Also at about this same time someone from the hospital called Dr. Cortes on the phone.  Dr. Cortes replied that he would go to the hospital to examine Sanchez.

At approximately 9:00 o'clock that morning Sanchez was found to be fully dilated, at which point the nurses prepared her for delivery.  A nurse then approached Dr. Diaz and requested that he attend to Sanchez because she was about to go into labor and her doctor had not yet arrived at the hospital.  Dr. Diaz examined Sanchez and found her fully dilated with bulging membranes.  He proceeded to rupture the membranes at which point he observed "heavy meconium" in the amniotic fluid.  Dr. Diaz applied a vacuum extractor several times in an attempt to expedite vaginal delivery, without success.  Dr. Cortes arrived at the hospital at approximately 9:20 a.m.  Once Dr. Cortes arrived he took over the delivery from Dr. Diaz.  Dr. Cortes eventually delivered Ilse via caesarean section.  Dr. Diaz did not charge Sanchez, her medical insurer, Dr. Cortes, or Hospital San Pablo for the medical services he provided to Sanchez.

Plaintiffs have submitted evidence from three proposed experts (of various medical specialties) opining that various acts and omissions by Dr. Diaz related to Ilse's delivery fell below the

relevant standard of care. One of them opined that the care provided by Dr. Diaz constituted a "significant deviation" from the standard of care.

## II.  Discussion

### A.    Summary Judgment Standard

The Court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. The rule states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); see also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the Court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic

dispute.  See Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine."  Material means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is genuine when a reasonable jury could return a verdict for the nonmoving party based on the evidence.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment.  Id. at 252.  It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion."  Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor."  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).  The court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation."  Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

B.    **Good Samaritan Law**

As the Supreme Court of Puerto Rico has explained, although there is a professional ethical responsibility placed on doctors to render medical services in an emergency situation, there is no such legal obligation. Elias-Vega v. Chenet, 147 D.P.R. 507, 514 (1999). For fear of being the target of a future lawsuit, many doctors have been hesitant to provide their medical services to those in need when an emergency occurs. Id. To incentivize doctors and others to provide assistance in emergency situations, or at least to mitigate the "incentive" not to act, the Puerto Rico Legislature passed the "Good Samaritan Law." Law No. 139 of June 3, 1976. This law shields qualifying doctors from liability for their actions when they intervene in an emergency medical situation, regardless of where that emergency occurs, as long as the doctor was not duty bound to act. Id. at 516.

Specifically, section 1 of the "Good Samaritan Law" provides that persons authorized to practice medicine in Puerto Rico "are hereby exempted from civil liability when, out of the regular course and place of their employment or professional practice, they voluntarily and gratuitously render emergency services or assistance, or without having a preexisting duty to act toward the person who receives the assistance." P.R. Laws Ann. tit. 20 § 31. Section 4 of the law states that the "exemption from liability does not apply when the acts or omissions of the persons referred to in

this Act constitute gross negligence or when there has been intent to harm." Id.

The Supreme Court of Puerto Rico distilled the statute into a handy six-factor test:  (1) the doctor must be authorized to practice medicine in Puerto Rico; (2) the doctor must be acting outside of the course and place of his or her regular employment or professional practice; (3) the doctor must have acted voluntarily; (4) the doctor must have donated the medical services (i.e., acted free of charge); (5) the doctor must have provided the services in the context of a medical emergency; and (6) the services provided by the doctor did not constitute gross negligence or provided with an intent to cause harm. Elias-Vega, 147 D.P.R. at 515-16.  In essence, the "Good Samaritan Law" provides an affirmative defense that the defendant doctor carries the burden to prove.

There is no dispute between the parties that Dr. Diaz meets parts 1 and 5 of the test:  Dr. Diaz was duly authorized to practice medicine in Puerto Rico at the time that he assisted in Ilse's delivery, and Ilse's impending birth constituted an emergency medical situation.  The parties disagree as to the other four factors, however.

Dr. Diaz asserts that he had no duty to treat Sanchez because she was not his patient and because he was not an employee of the hospital; rather he had been granted staff privileges to use the hospital solely so that he could treat his patients.  Dr. Diaz also

notes that he did not charge Sanchez, her insurer, Hospital San
Pablo, or Dr. Cortes for the services he rendered.  Plaintiffs, on
the other hand, focus upon Dr. Diaz's responsibilities as a member
of the medical staff of the hospital and argue that Dr. Diaz, as a
member of the hospital's medical staff, was duty bound to render
medical services to Sanchez.   Plaintiffs argue that it is
immaterial that Dr. Diaz did not charge for his services because he
could have charged for them.   Unsurprisingly, plaintiffs also
allege that Dr. Diaz's acts were grossly negligent *and* done with
intent to cause harm.  Although the Court does not agree with all
of the plaintiffs' contentions, it finds that there is a material
issue of fact as to whether or not Dr. Diaz could have refused to
render medical services to Sanchez without violating his
contractual duty to Hospital San Pablo.  See Elias-Vega, 147 D.P.R.
at 519.

The medical staff bylaws, which Dr. Diaz agreed to follow in
order to become a member of the hospital's medical staff, impose
upon the staff certain "ongoing responsibilities." (Docket No. 66-
4, p. 3)  These responsibilities include "completing such
reasonable responsibilities, assignments and rotations imposed upon
the Member by virtue of Medical Staff membership, including . . .
attendance requirements[.]"   (Id.)  More importantly, they also
include "participating in such Emergency service coverage, on call
coverage or consultation panels as may be determined by the

Hospital." (Id. at p. 4)  There is nothing on the record before the Court that explains to what extent the hospital requires its staff members to participate in emergency service coverage.  Even Dr. Diaz's unsworn statement submitted under penalty of perjury does not address this topic; it simply says that a nurse requested that he attend to a patient who was in impending labor.  (Docket No. 52-2, p. 1)  Thus, the Court finds that a fair inference may be drawn from the hospital's bylaws, especially given the lack of any evidence interpreting the possible ambiguity in the bylaws, that Dr. Diaz was in fact obligated under his agreement with Hospital San Pablo to render emergency medical services to Sanchez. Accordingly, Dr. Diaz has failed to satisfy the second and third factors of the Good Samaritan test.[2]

## III. Conclusion

For the reasons explained above, the Court **DENIES** Dr. Diaz's motion for summary judgment.  The Court also takes **NOTE** of the two supplemental motions filed by Dr. Diaz and the plaintiffs.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, February 12, 2009.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE

---

[2] The Court finds it unnecessary to evaluate the sixth factor given Dr. Diaz's failure to make the necessary showing in regards to factors two and three.